UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAKAZULU SIGIDI KASENZANGAKHONA,<br><br>           Plaintiff,<br><br>    v.<br><br>L. CANO, et al.,<br><br>           Defendants. | Case No.: 1:23-cv-001764-JLT-SKO<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION FOR FAILURE TO STATE A CLAIM FOLLOWING SCREENING**<br><br>**14-DAY OBJECTION DEADLINE** |

Plaintiff Shakazulu Sigidi KasenzangaKhona is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.     BACKGROUND**

The Court issued its First Screening Order on March 12, 2024, (doc. 12), and found that Plaintiff's complaint failed to state a claim upon which relief could be granted against any named defendant. (*Id*. at 4-13.) Plaintiff was granted leave to file a first amended complaint, curing the deficiencies identified in the screening order, within 21 days. (*Id*. at 13-14.)

Plaintiff filed a first amended complaint on March 18, 2024. (Doc. 15.) On March 27, 2024, Plaintiff filed a document titled "Objections to Magistrates Judges Findings and Recommendations Including State Writ of Habeas Corpus." (Doc. 16.) On April 3, 2024, the Court issued its Order Regarding Plaintiff's Filing of March 27, 2024. (Doc. 17.) The Court found

that the document was "another amended complaint and not objections to the Findings and Recommendations."[1] (*Id*. at 2.) The Court determined that Plaintiff's filing of March 18, 2024, was "not responsive to the screening order." (*Id*.) Thus, the amended complaint filed March 18, 2024, was stricken and the docket entry corresponding to the March 27, 2024, filing was modified to reflect the filing of a first amended complaint. (*Id*. at 2-3.)

On April 15, 2024, Plaintiff filed a handwritten document bearing the titles "Amendmend [sic] Complaint First" and "Response to First Screening Order …." (Doc. 21.) This filing was docketed as a second amended complaint.

Following review of the filings submitted by Plaintiff on March 27, 2024, and April 15, 2024, the Court will screen the first amended complaint filed March 27, 2024. The submission of April 15, 2024, is not an amended complaint, complete in and of itself, nor was it submitted on the amended complaint form previously provided by the Court. The Court will nonetheless briefly address this filing below.

## II.   SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.   PLEADING REQUIREMENTS

### A. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain

---

[1] The Court issued Findings and Recommendations to Deny Plaintiff's Request for Injunctive Relief on March 12, 2024. (Doc. 14.) On April 19, 2024, District Judge Jennifer L. Thurston issued her order adopting the recommendations in full.

2

"a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id.* (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a plaintiff must show a causal connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Rizzo v. Goode*, 423 U.S. 362, 373-75 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative

act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

**IV.    DISCUSSION**

**A.  Plaintiff's First Amended Complaint[2]**

As an initial matter, the Court notes Plaintiff's first amended complaint is comprised of an amended civil rights complaint form (Doc. 16 at 2-6), followed by a multi-page exhibit (*id*. at 7-10, 12-21, 23-27), interspersed with additional handwritten factual allegations and/or argument (*id*. at 11, 22).

Plaintiff names Correctional Counselor I L. Cano, Correctional Counselor I A. Lozano,[3] Correctional Counselor II De La Torre, Correctional Counselor III Cunning, Captain Stohl, and Villa, employed at the Substance Abuse Treatment Facility ("SATF") in Corcoran, California, as defendants in his first amended complaint. (Doc. 16 at 2-4.) Plaintiff seeks the removal of the "VAD"[4] before he paroles and publication of this action's outcome "so that in the future SATF can be held accountable for their corruption including all assault concerning misconduct (e.g., sexual orientation, PC 2600, PC 2651, PC 422.6, PC 132 and PC 134." (*Id*. at 6.)

**B.  Plaintiff's Claims**

In the form portion of the first amended complaint, under Claim 1, Plaintiff states he is "entitled to relief (Swierkiewicz v. Sorema (2002) because of equal protection, due process, and freedom from cruel and unusual punishment." (Doc. 16 at 4.) Under Claim 2, Plaintiff states: "The classification committee chair De La Torre CCII and Cunning CCIII both supervise subordinates Cano and [Lozano]; however, both are in congruent with their Misconduct, demonstrates arbitrary and capricious acts." (*Id*. at 5.)

---

[2] The Court disregards the first page of the filing that includes Plaintiff's handwritten, erroneous title referring to objections to findings and recommendations.

[3] This individual's name is spelled both "Lorzano" and "Lozano." The Court will use the latter spelling here.

[4] "VAD" refers to Violence Administrative Determinant.

4

Claim One: Factual Allegations

Plaintiff contends that at annual committee hearing held July 26, 2022, (doc. 16 at 4), he was denied "removal of Vio" because he "had not elapsed 7 years. However, 45 days later 9-19-2022 [he] became eligible." (*Id.*) Plaintiff contends California Department of Corrections and Rehabilitation (CDCR) policy states "'Vio can only be removed at Annual Committee Hearings'" and that he was told the "Vio would be removed" at the next annual hearing on June 15, 2023. (*Id.*) On that date, however, Defendant Cano failed to review "previous violence which is a requirement for VAD to be removed." (*Id.* at 4-5.) Plaintiff states "CSR[5] J. Rivera on 8-3-2023 instructed and obligated him [presumably Cano] to take [Plaintiff] back to classification committee and review violence." (*Id.* at 5.) Plaintiff alleges Cano deliberately failed to schedule a timely committee hearing and failed to review "previous violence" as instructed. (*Id.*)

Plaintiff further contends it took another three months and an audit performed by "CSR S. [Holmes]" before the audit noted "'… this statement is false as the information is not in the prior chrono. Also, it is insufficient to refer to another chrono (particular with false statements) as a substitute ….'" (*Id.*) Plaintiff also states "(see exhibits One)."[6] (*Id.*)

---

[5] "CSR" refers to a Classification Service Representative.

[6] Plaintiff's multi-page exhibit is comprised of the following:
- Grievance Appeal Log No. 000000487429 "Claim No. 1" dated 12/30/23, contending an audit of 11/9/23 recommended removal of Vio. and transfer to LAC or NKSP, but SATF has not transferred (Doc. 16 at 8)
- Grievance Appeal Log No. 000000487429 "Claim No. 2" dated 12/30/23, contending he has not received "confirmed copies of CSR removing Vio. Adm. Def." and noting against he has not been transferred (Doc. 16 at 18)
- Office of Grievance Decision re same log number, acknowledging SOMS review reveals a classification chrono dated 11/9/23 "reveals that a VIO Removal Review/Transfer was conducted" and P's case was referred to the CSR, "recommending Removal of [his] Administrative Determinate (VIO)" and transfer and that his case was "awaiting review" by the CSR who has "the final determination on the removal." It notes "all procedural safeguards in regard to the UCC hearing were met …" Granted. (Doc. 16 at 9, 12-14)
- Auditor Action dated 2/15/24 reflecting audit type "Administrative Determinant Review; Transfer Endorsement (between Institutions) and Audit Result: Deferred; stating a "new committee is required to address" issues related to a failure on 11/9/23 by UCC to "address each violent felony conviction, specifically addressing the status of VIO review for each" as per policy, and that "Although the arrest reports may be noted as purged for the 1982 Robbery as noted in the classification committee chrono, the circumstances are documented on a POR located in archive CDCR #P65629 ERMS Case Summary Backfile, Page 16. A VIO Review is required for this offense." (Doc. 16 at 27)
- The remainder of this exhibit includes copies of blank grievance appeal forms and copies of the front and back of envelopes

Claim Two: Factual Allegations

Plaintiff states Defendant Lozano is his counselor now, (doc. 16 at 5), and Plaintiff has "tried to see him on 4 attempts which he denied me access when access to your courts were warranted." (*Id*.) On February 15, 2022, when Plaintiff asked Lozano why the "CSR" had not "removed [his] Vio (VAD)," Lozano replied he did not know what to do. (*Id*.) Plaintiff alleges "S. Homes instructed Lozano to schedule a hearing and review previous violence without false statements, particular[ly] false statements as a substitute." (*Id.*) Plaintiff asserts "its close to 4-15-2024" and he anticipates being interviewed by the committee and that previous violence will be addressed and contends that "demonstrates misconduct a second time …." (*Id*. at 5-6.) Plaintiff alleges that when he "was fighting to transfer CCIII Cunning" told him, "'you are not going to Firecamp and you are not going to a level One MSF['] and De La Torre and Stohl has done nothing as managing their staff." (*Id*. at 6.)

Additional Factual Allegations[7]

Plaintiff alleges he "arrived in CDCR 2016" and has "maintained exceptional conduct without any Serious Rule Violation Reports; therefore, on October 19, 2021 Kathleen Allison requested resentence under 1170(d)(1)." (Doc. 16 at 11.) His "request was denied in November 2021," but the state appellate court reversed and remanded on appeal, sending the case back to the sentencing judge. (*Id*.) Plaintiff contends that although the state court judge "admitted on record" that Plaintiff did "not pose a threat to public safety," the judge "denied resentencing again, disregarding post-conviction factors, instead resentencing because of [Plaintiff's] lengthy criminal history …." (*Id*.) Plaintiff states he has appealed that outcome. (*Id*.) Plaintiff has also "filed a number of Appeals (602) throughout" his eight years of incarceration and filed actions in the Kings County Superior Court "and the Federal Courts, about Vio. Administrative Determinant as well as transfer to a MSF level One Institution." (*Id*.) He contends he has earned the privilege of a transfer and wants the "Vio" removed. (*Id*.)

Plaintiff states that "[u]pon removal of Vio.," he would be deemed "level One custodial

---

[7] As noted above, additional argument and/or allegations appear in the exhibit. The Court summarizes them here and will incorporate the information in its analysis, as appropriate.

and this is a Level II institution" and will suffer injury because he has earned being housed in such a facility "due to positive programming for 8 years …." (Doc. 16 at 22.) Plaintiff alleges that in 2016 he "had about 45-55 points" and was housed in a "level III" facility for one to two years. (*Id*.) He was then housed in Solano Prison, a Level II facility, where he engaged in numerous self-help groups. (*Id*.) Plaintiff states that in 2020, COVID-19 caused his transfer to Duel Vocational Institution for about 18 months before "its closure" and Plaintiff "agreed to attend the Bachelors Program at CRC." (*Id*.) Plaintiff contends that due to a psychiatric episode, his "level of care was changed from CCCMS to EOPS in September 2021 until October 2021 and changed back to CCMS upon arrival at SATF." (*Id*.) He has been housed at SATF for about two and a half years "with no serious Rule Violations, positive programming … along with inmate led groups, and multiple college courses" in the absence of a "reward." (*Id*.) He asserts that instead he has been continually punished "from the Administration and Inmates due to General Population status." (*Id*.) Plaintiff contends he is entitled to relief in the form of "Vio. Removal" and a transfer to "LAC or NKSP." (*Id*.)

### C. Applicable Legal Standards

Because Plaintiff explicitly references the "equal protection, due process, and freedom from cruel and unusual punishment," the Court will provide the relevant legal standards for those claims.

#### Fourteenth Amendment: Equal Protection Clause

The Equal Protection Clause of the Fourteenth Amendment requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Center, Inc*., 473 U.S. 432, 439 (1985); *Hartmann v. California Dep't of Corr. & Rehab*., 707 F.3d 1114, 1123 (9th Cir. 2013). To state a claim, a plaintiff must show that defendants intentionally discriminated against him based on his membership in a protected class. *Hartmann*, 707 F.3d at 1123.

If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Engquist v. Oregon Department of Agriculture*, 553 U.S. 591, 601-02 (2008). To state an equal protection claim under

this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S.562, 564 (2000). Further, to establish a violation of the Equal Protection Clause, the prisoner must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239-240 (1976).

Fourteenth Amendment: Due Process Clause

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* 515 U.S. at 484.

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556. With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. *Id.* at 563-71. Confrontation and cross examination are not generally required. *Id.* at 567. As long as the five minimum *Wolff* requirements are met, due process has been satisfied. *Walker v. Sumner*, 14 F.3d 1415, 1420 (9th Cir. 1994).

"When prison officials limit a prisoner's right to defend himself they must have a

8

legitimate penological interest." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992) (per curiam) (concluding that prisoners do not have a right to have an independent drug test performed at their own expense). The right to call witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985); *see also Mitchell v. Dupnik*, 75 F.3d 517, 525 (9th Cir. 1996); *Koenig*, 971 F.2d at 423; *Zimmerlee v. Keeney*, 831 F.2d 183, 187-88 (9th Cir. 1987) (per curiam).

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board ...." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Touissaint v. McCarthy*, 926 F.2d 800, 802-03 (9th Cir. 1991); *Bostic v. Carlson*, 884 F.2d 1267, 1269-70 (9th Cir. 1989); *Jancsek, III v. Oregon Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987); *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987); *see especially Burnsworth v. Gunderson*, 179 F.3d 771, 774-74 (9th Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of liberty interest.) The relevant inquiry is whether "there is *any* evidence in the record that could support the conclusion reached ….as [t]he Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board." *Hill* at 455-57.

<u>Eighth Amendment: Conditions of Confinement</u>

The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825 (1994); *Morgan v. Morgensen,* 465 F.3d 1041, 1045 (9th Cir. 2006). Thus, no matter where they are housed, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks & citations omitted). To establish a violation of this duty, a prisoner must first demonstrate an objectively serious deprivation, one that amounts to the denial

of "the minimal civilized measures of life's necessities." *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Second, a prisoner must demonstrate that prison officials acted with "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991); *Johnson*, 217 F.3d at 733. A prison official is liable for denying an inmate humane conditions of confinement only if "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

### D. Analysis

Plaintiff fails to assert a cognizable claim against any named defendant.[8] Regarding any equal protection claim, Plaintiff fails to allege, much less demonstrate, that any defendant intentionally discriminated against him based on his membership in a protected class. *Hartmann*, 707 F.3d at 1123. He also fails to allege that he is a member of an identifiable class, intentionally treated differently from others similarly situated, or that there was no rational basis for the difference in treatment. *Olech*, 528 U.S. at 564. Nor can the Court discern any basis upon which such a claim could be plausibly alleged. Thus, the Court finds granting Plaintiff leave to amend this claim would be futile. *Hartmann*, 707 F.3d at 1129-30 ("A district court may deny leave to amend when amendment would be futile").

Second, regarding any due process related to the VAD and any Defendants' failure to remove the "Vio.," as Plaintiff was previously advised (*see* Doc. 12 at 7-8), those actions "do not support a constitutional or federal violation" and instead amount "only to a possible claim of misapplication of state law." *Austin v. Sherman*, No. 1:18-cv-01630-BAM (PC), 2020 WL 2112070, at *4 (E.D. Cal. May 4, 2020) (citing *Vu v. Rackley*, No. 2:16-cv-0217 TLN GGH P, 2016 WL 3181228, at *3 (E.D. Cal. Jun. 8, 2016) [finding petitioner's claim that CDCR's decision to classify her as violent was error in light of her criminal history and 15 C.C.R. § 3375.2(b)(25) does not state constitutional or federal violation, only possibly a state law violation] and *Merdia*

---

[8] No factual allegations asserted in the first amended complaint involve named defendant Villa.

1    *v. Davis*, No. 18-CV-06433-CRB (PR), 2019 WL 631490, at *1 (N.D. Cal. Feb. 14, 2019)
2    [finding former prisoner's claim that he would have earned more good time credits and been
3    eligible for parole consideration earlier than he was had prison officials applied section 3491,
4    rather than section 3375.2(b)(29)(J), and removed his VIO earlier than they did amounted to no
5    more than a claim of misapplication of state law not cognizable as a violation of a federal right
6    under § 1983]).

7    Additionally, Plaintiff does not allege any committee hearing lacked the five minimum
8    procedural protections required—written notice, 24 hours between written notice and the time of
9    the hearing, a written statement, rights concerning witnesses or documentary evidence, or
10   necessary legal assistance—for a procedural due process claim. *Wolff*, 418 U.S. at 563-71. Claims
11   asserting an erroneous classification status or violations of prison policy do not state a cognizable
12   section 1983 claim. *See Meachum v. Fano*, 427 U.S. 215, 227-25 (1976) ("Transfers between
13   institutions, for example, are made for a variety of reasons and often involve no more than
14   informed predictions as to what would best serve institutional security or the safety and welfare of
15   the inmate"); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (state actions that adversely affect a
16   prisoner's prison classification or qualification for institutional programs, do not automatically
17   activate a due process right); *Hernandez v. Johnston*, 833 F2d 1316, 1318 (9th Cir. 1987)
18   (prisoners have no federally-protected liberty interest in their classification status); *Case v. Kitsap*
19   *Cty. Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) ("There is no § 1983 liability for violating
20   prison policy. Plaintiff must prove that the official violated his constitutional right," quoting
21   *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997)); *Nurre v. Whitehead*, 580 F.3d 1087,
22   1092 (9th Cir. 2009) (section 1983 claims must be premised on violation of federal constitutional
23   right); *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) (there is no liability under § 1983
24   for violating prison policy); *Vu v. Rackley*, No. 2:16-cv-0217 TLN GGH P, 2016 WL 3181228, at
25   *4 (E.D. Cal. June 8, 2016) (finding due process considerations not implicated by a prisoner's
26   challenge to administrative decision to classify her as violent). Because Plaintiff's first amended
27   complaint is deficient for the same reasons as those articulated in the Court's original screening
28   order concerning this claim (*see* Doc. 12 at 6-9) and because Plaintiff has failed to remedy those

1    deficiencies, the Court assesses that Plaintiff cannot cure his pleadings and, thus, that leave to
2    amend would be futile. *Hartmann*, 707 F.3d at 1129-30.

3           Third, regarding an Eighth Amendment claim against any named defendant, Plaintiff fails
4    to allege sufficient facts establishing any defendant knowingly disregarded an excessive risk to
5    his health and safety. *Farmer*, 511 U.S. at 837. Nor can the Court discern any facts from which
6    Plaintiff might state a cognizable Eighth Amendment claim warranting further amendment.
7    *Hartmann*, 703 F.3d at 1129-30.

8           In sum, Plaintiff's claims involve a purportedly inaccurate "VAD" or "Vio." finding. But
9    such falsities or inaccuracies do not state a constitutional claim. *See, e.g.*, *Ellis v. Foulk*, No. 14-
10   cv-0802 AC P, 2014 WL 4676530, at *2 (E.D. Cal. Sept. 18, 2014) ("Plaintiff's protection from
11   the arbitrary action of prison officials lies in 'the procedural due process requirements as set forth
12   in *Wolff v. McDonnell*'") (citing *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984));
13   *Solomon v. Meyer*, No. 11-cv-02827-JST (PR), 2014 WL 294576, at *2 (N.D. Cal. Jan. 27, 2014)
14   ("[T]here is no constitutionally protected right to be free from false disciplinary charges") (citing
15   *Chavira v. Rankin*, No. C 11-5730 CW (PR), 2012 WL 5914913, at *1 (N.D. Cal. Nov. 26, 2012)
16   ("The Constitution demands due process, not error-free decision-making")); *Johnson v. Felker*,
17   No. 1:12-cv-02719 GEB KJN (PC), 2013 WL 6243280, at *6 (E.D. Cal. Dec. 3, 2013)
18   ("Prisoners have no constitutionally guaranteed right to be free from false accusations of
19   misconduct, so the mere falsification of a [rules violation] report does not give rise to a claim
20   under section 1983") (citing *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) and *Freeman
21   v. Rideout*, 808 F.2d 949, 951-53 (2d. Cir. 1986)).

22          Plaintiff has failed to cure the deficiencies identified in this Court's prior screening order.
23   It appears Plaintiff has simply ignored the legal standards provided in that order and instead
24   restates a prior claim (Fourteenth Amendment due process) and adds others (Eighth Amendment
25   and Fourteenth Amendment equal protection). However, the actions attributed to SATF officials
26   by Plaintiff simply do not amount to constitutional violations in a section 1983 action. And
27   granting Plaintiff further leave to amend would be futile. Accordingly, the undersigned will
28   recommend that this action be dismissed for Plaintiff's failure to state a claim upon which relief

1  may be granted.

2  **E.  The April 11, 2024, Filing**

3  As noted above, Plaintiff submitted a document alternatively titled as a first amended complaint and as a response to the screening order. (Doc. 21.) To the extent Plaintiff seeks to cure the deficiencies identified in the Court's First Screening Order, the Court will address his First Amendment retaliation claim despite its absence from the amended complaint discussed above.

7  To establish a retaliation claim, Plaintiff must allege (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). To prove the second element, retaliatory motive, Plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating a defendant's knowledge of a plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

21  Plaintiff asserts "SATF staff" "adversely disobeyed CSR instructions" to remove the VAD, transfer Plaintiff to another institution, and to avoid an extended parole, because Plaintiff filed "numerous appeals" at SATF, has an appeal history at CDCR, and has an exceptional conduct history that "threatens their job history." (Doc. 21 at 3.) Plaintiff also alleges the exercise of his First Amendment rights was chilled because the library "is not equipped for successful litigation" as templates are not "adequately provided," the library is too small, and the librarian "very personally" denies inmates services. (*Id.*) Lastly, he contends those actions do not advance a legitimate correctional goal to "rehabilitate," "access to the courts," and "constitutional rights."

13

1  (*Id*.) Plaintiff maintains those "elements prove that retaliatory motive was introduced but
2  counteractive that conspiracy has been substantive because of [his] challenging conduct." (*Id*. at
3  4.) He states the motive "becomes obvious" considering the June 15, 2023, "recommendation for
4  VAD to be removed," and the delays associated between committee hearings. (*Id*.)

The Court notes this filing involves the first reference to Defendant Villa:

> In short, Social Worker Villa for any reason should also not label me as being on a SNY when SATF-F yard is for non designated program facility which although voluntary, category of being a general population inmate are a decision made by inmate.

(*Id*.)

First, Plaintiff's global reference to "SATF staff" is insufficient to state a claim. *Rizzo*, 423 U.S. at 373-75. He must briefly identify the conduct alleged as to each defendant for each claim. *Iqbal*, 556 U.S. at 676-77.

More importantly, Plaintiff fails to allege any prison official's action chilled the exercise of his First Amendment rights. There is no causal connection between a library that "is not equipped for successful litigation" and any action taken by the named Defendants concerning their alleged failures concerning "VAD" or "Vio." removal. Therefore, even assuming the first, second, third, and fifth requirements of a retaliation claim are met, Plaintiff has not established the required fourth element. Nor does it appear Plaintiff can cure this deficiency with a further opportunity to amend. *Hartmann*, 703 F.3d at 1129-30.

Finally, the Court finds that the sparse facts alleged regarding Defendant Villa, purportedly improperly labeling Plaintiff "as a SNY," fail to state a claim upon which relief can be granted. *Iqbal*, 556 U.S. at 678 (the "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim). These facts pertain to classification status and do not state a cognizable constitutional claim. *Moody*, 429 U.S. at 88 n.9; *Hernandez*, 833 F2d at 1318.

### V.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that Plaintiff's first amended complaint be dismissed without leave to amend for failure to state a claim.

These Findings and Recommendations will be submitted to the United States District

Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: __**April 3, 2025**__       /s/ *Sheila K. Oberto*
                                                   UNITED STATES MAGISTRATE JUDGE